# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARLIN JOHNSON, on behalf of himself and
all others similarly situated,

        Plaintiff,

    v.

ORGANO GOLD INT'L, INC., et al.,

        Defendants.

Civil Case No. 1:15-cv-00390-LPS

---

## DEFENDANT ORGANO GOLD INT'L, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS

Colm F. Connolly (Del. Bar No. 3151)
Jody C. Barillare (Del. Bar No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
1007 N. Orange St., Ste. 501
Wilmington, DE 19801
Telephone: 302.574.3000
Facsimile: 302.574.3001
cconnolly@morganlewis.com
jbarillare@morganlewis.com

Thomas J. Sullivan (*pro hac vice*)
Zachary M. Johns (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001
tsullivan@morganlewis.com
zjohns@morganlewis.com

*Attorneys for Defendant
Organo Gold Int'l, Inc.*

Dated: January 11, 2016

# TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................ 1

II.    SUMMARY OF THE ARGUMENT ........................................................ 1

III.   STATEMENT OF FACTS ..................................................................... 2

IV.   ARGUMENT ...................................................................................... 4

     A.    Plaintiff's Claims Regarding the Content of Ganoderma Lucidum Are Preempted Under the Nutrition Labeling and Education Act ............................... 4

     B.    Plaintiff Fails to Plead Fraud and Intentional Misrepresentation with Particularity ........................................................................................ 7

     C.    Plaintiff Fails to Plead Essential Elements for His Remaining Claims ................ 9

         1.    Plaintiff Has Not Alleged Causation for His Failure-to-Warn Claims ............................................................................... 9

         2.    No Facts Are Alleged to Establish the Existence of an Express Warranty ............................................................................ 11

         3.    No Facts Are Alleged to Establish the Existence of an Implied Warranty of Fitness for a Particular Purpose ........................... 12

     D.    The Court Should Dismiss Plaintiff's Declaratory Judgment Claim ................. 13

     E.    Plaintiff's Class Allegations Should Be Stricken ................................... 14

         1.    Plaintiff's Claims Are Not Typical of the Class ..................... 15

         2.    Plaintiff Is Not an Adequate Class Representative ................. 16

         3.    The Purported Class Is Not Ascertainable ............................. 17

         4.    Plaintiff Cannot Certify a Class Under Rule 23(b)(2) ............ 20

V.     CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*,
  Case No. 07-cv-4925 (JAP), 2008 WL 4056244 (D.N.J. Aug. 26, 2008) ..............................14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................................15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................9, 11

*Baker v. APP Pharm., LLC*,
  Case No. 09-cv-05725 JAP, 2010 WL 4941454 (D.N.J. Nov. 30, 2010) ..............................11

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) .....................................................................................................20

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*,
  Case No. 12-cv-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ..........................................14

*Burris v. Cross*,
  583 A.2d 1364 (Del. Super. Ct. 1990) .....................................................................................13

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ...............................................................................................17, 18

*Christiana Mortg. Corp. v. Del. Mortg. Bankers Ass'n*,
  136 F.R.D. 372 (D. Del. 1991) .................................................................................................20

*Danforth v. Acorn Structures, Inc.*,
  608 A.2d 1194 (Del. 1994) .......................................................................................................16

*DiIenno v. Libbey Glass Div., Owens-Illinois, Inc.*,
  668 F. Supp. 373 (D. Del. 1987) ..............................................................................................12

*Falcon Steel Co., Inc. v. HCB Contractors*,
  Case No. 89C-JL-214, 1991 WL 166120 (Del. Super. Ct. July 31, 1991) ..............................14

*Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*,
  261 F. Supp. 2d 837 (E.D. Mich. 2003).....................................................................................13

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007).....................................................................................................7, 8

*Gary Plastic Packaging Corp. v. Merrill Lynch*,
   903 F.2d 176 (2d Cir. 1990)..................................................................................17

*Gross v. Stryker Corp.*,
   858 F. Supp. 2d 466 (W.D. Pa. 2012)....................................................................11

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 349 (3d Cir. 2013)..................................................................................19

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008)...................................................................6, 7

*In re POM Wonderful LLC*,
   Case No. 10-cv-02199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)...................19

*In re Sch. Asbestos Litig.*,
   789 F.2d 996 (3d Cir. 1986)..................................................................................20

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..................................................................................16

*Indianapolis Life Ins. Co. v. Hentz*,
   Case No. 1:06-cv-2152, 2008 WL 4453223 (M.D. Pa. Sept. 30, 2008)...................8

*Khoday v. Symantec Corp.*,
   858 F. Supp. 2d 1004 (D. Minn. 2012)..................................................................13

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
   844 F. Supp. 2d 519 (D. Del. 2012).....................................................................8, 9

*Major v. Ocean Spray Cranberries, Inc.*,
   Case No. 5:12-cv-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013).......16

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012).............................................................................15, 18

*MDNet, Inc. v. Pharmacia Corp.*,
   147 F. App'x 239 (3d Cir. 2005) ............................................................................8

*Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*,
   Case No. 7092-VCP, 2012 WL 6632681 (Del. Ch. Ct. Dec. 20, 2012) ..................8

*Mills v. Giant of Maryland, LLC*,
   441 F. Supp. 2d 104 (D.D.C. 2006).........................................................................7

*Mladenov v. Wegmans Food Mkts., Inc.*,
   308 F.R.D. 127 (D.N.J. 2015)...............................................................................19

iii

*Mladenov v. Wegmans Food Mkts., Inc.,*
    --- F. Supp. 3d ---, Case Nos. 15-00373, 15-00382, 15-00618-JEI-AMD, 2015 WL
    5023484 (D.N.J. Aug. 26, 2015) ...............................................................................11, 19, 20

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997) ...................................................................................................9, 11

*Nemphos v. Nestle Waters N. Am., Inc.,*
    775 F.3d 616 (4th Cir. 2015) ........................................................................................................4

*New Haverford P'ship v. Stroot,*
    772 A.2d 792 (Del. 2001) ...........................................................................................................10

*Newman v. RCN Telecom Servs., Inc.,*
    238 F.R.D. 57 (S.D.N.Y. 2006) ..................................................................................................17

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1991) ...................................................................................................................15

*Pa. Employee Benefit Trust Fund v. Zeneca, Inc.,*
    Case No. 05-cv-075, 2005 WL 2993937 (D. Del. Nov. 8, 2005) .................................................7

*Reybold Grp., Inc. v. Chemprobe Techs., Inc.,*
    721 A.2d 1267 (Del. 1998) .........................................................................................................10

*Riegel v. Medtronic, Inc.*
    552 U.S. 312 (2008) .....................................................................................................................6

*Salvio v. Amgen, Inc.,*
    810 F. Supp. 2d 745 (W.D. Pa. 2011) ........................................................................................10

*Semenko v. Wendy's Int'l, Inc.,*
    Case No. 2:12-cv-0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) ...............14, 15, 16, 17

*Smajlaj v. Campbell Soup Co.,*
    782 F. Supp. 2d 84 (D.N.J. 2011) ................................................................................................6

*Smith v. Daimlerchrysler Corp.,*
    Case No. 94C-12-002JEB, 2002 WL 31814534 (Del. Super. Ct. Nov. 20, 2002) ...................8

*Starks v. Coloplast Corp.,*
    Case No. 13-cv-3872, 2014 WL 617130 (E.D. Pa. Feb. 18, 2014) .....................................11, 18

*Stewart v. Beam Glob. Spirits & Wine, Inc.,*
    Case No. 11-cv-5149, 2014 WL 2920806 (D.N.J. June 27, 2014) ...........................................19

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ...............................................................................................................20

iv

*Weiner v. Snapple Beverage Corp.*,
Case No. 07-cv-8742 DLC, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)............................19

*Yarger v. ING Bank*,
285 F.R.D. 308 (D. Del. 2012) ........................................................................................8

*Young v. Johnson & Johnson*,
525 F. App'x 179 (3d Cir. 2013) ....................................................................................6

## STATUTES

6 Del. C. § 2-313.............................................................................................................12

6 Del. C. § 2-313(1).........................................................................................................11

6 Del. C. § 2-314.............................................................................................................10

6 Del. C. § 2-315.............................................................................................................12

6 Del. C. § 2-607(3).........................................................................................................12

6 Del. C. § 2513(b)(2)........................................................................................................7

10 Del. C. § 6506.............................................................................................................14

21 U.S.C. § 321(f).............................................................................................................5

21 U.S.C. § 343................................................................................................................6

21 U.S.C. § 343-1..........................................................................................................5, 6

Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990)....................4

## OTHER AUTHORITIES

21 C.F.R. § 101.4(a).......................................................................................................5, 6

21 C.F.R. § 101.9..........................................................................................................5, 6

Del. Super. Ct. Civ. R. 23(b)(2).........................................................................................20

Del. Super. Ct. Civ. R. 23(b)(3).........................................................................................17

Fed. R. Civ. P. 9(b)................................................................................................1, 7, 8, 9

Fed. R. Civ. P. 12(b)(6).....................................................................................................9

Fed. R. Civ. P. 12(f).........................................................................................................14

Fed. R. Civ. P. 23 ...................................................................................14, 15

Fed. R. Civ. P. 23(a)(3) ..................................................................................15

Fed. R. Civ. P. 23(a)(4) ..................................................................................16

Fed. R. Civ. P. 23(b)(2) ..................................................................................20

Fed. R. Civ. P. 23(b)(3) ...........................................................................15, 17

Fed. R. Civ. P. 23(c)(1)(A) .............................................................................14

Fed. R. Civ. P. 23(d)(1)(D) .............................................................................14

Memo. of Understanding Between the Federal Trade Commission and FDA, MOU 255-
        71-8003 (1971), *available at*
        http://www.fda.gov/AboutFDA/PartnershipsCollaborations/MemorandaofUnderstand
        ingMOUs/DomesticMOUs/ucm115791.htm .........................................................................7

# I.  NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Marlin Johnson ("Plaintiff" or "Mr. Johnson") commenced this action in the Superior Court of the State of Delaware in and for New Castle County on March 19, 2015 by the filing of a "(Proposed) Class Action Complaint" (the "Complaint"). The Complaint alleges that Plaintiff suffered physical injuries after consuming coffee manufactured by Defendant Organo Gold Int'l, Inc., a Nevada corporation ("Defendant" or "Organo").[1] Plaintiff alleges that the Organo coffee he purchased was mislabeled because Organo (1) did not disclose the quantity or amount of Ganoderma Lucidum, an ingredient in Organo's coffee, and (2) failed to warn of the alleged health risks associated with Ganoderma Lucidum. The Complaint also purports to bring a statewide class action on behalf of all Delaware purchasers of any Organo product who suffered injuries substantially similar to those alleged by Plaintiff due to alleged mislabeling of Organo's products. The Complaint seeks compensatory and punitive damages, costs, and attorneys' fees for the personal injuries sustained by Plaintiff and for injuries sustained by the purported class as well as a declaratory judgment that Organo's products are mislabeled.

# II.  SUMMARY OF THE ARGUMENT

1.  Plaintiff's state-law claims that Organo must disclose the content of Ganoderma Lucidum in its coffee products are expressly preempted by federal law that regulates the disclosure of nutrient content information on food products.

2.  Plaintiff's remaining failure-to-warn claims for fraud (Count III) and intentional misrepresentation (Count VI) are not pleaded with the particularity Rule 9(b) requires and must be dismissed.

---

[1]  Organo is the only properly named defendant. The Complaint names additional defendants that either do not exist or have never transacted business. To the extent ORGANO GOLD INT'L INC. (in Washington), ORGANO GOLD INTERNATIONAL LLC, and/or ORGANO GOLD MANAGEMENT, INC. (Compl. ¶¶ 5-7) are considered properly joined and served defendants, those defendants, through Organo, hereby join in this Motion.

3.     The Complaint fails to allege specific facts that could establish essential elements of the remaining failure-to-warn claims. In particular, there are no facts to plausibly establish that any defect in Organo's labeling was a cause or contributing factor of Plaintiff's injuries for his breach of warranty of merchantability (Count II), negligence (Count IV), or negligent labeling (Count V) claims. Further, there are no facts to establish the existence of either an express warranty (Count II) or an implied warranty of fitness for a particular purpose (Count II).

4.     The Court should dismiss the claim for declaratory relief (Count I) because monetary relief would be a more efficient remedy for Plaintiff.

5.     Even if Plaintiff had stated a claim (which he has not), Plaintiff's class allegations must be stricken because (1) Plaintiff's claims for physical injuries are not typical of the claims of the purported class, (2) Plaintiff's physical injuries present a conflict that renders him an inadequate class representative, (3) the purported class is not ascertainable, and (4) Plaintiff's injunctive class cannot stand because the Complaint seeks primarily monetary relief.

## III.     STATEMENT OF FACTS

Organo makes coffees, teas, cocoas, supplements, and assorted personal care products that contain the ancient Chinese herbal ingredient Ganoderma Lucidum. Compl. ¶¶ 10, 12. Plaintiff alleges that the labeling of Organo's products is deficient because (1) the labeling fails to list the amount of Ganoderma Lucidum in each product, and (2) does not warn of the alleged blood-thinning properties of Ganoderma Lucidum. *Id.* The Complaint, however, does not include an example of any label that is supposedly mislabeled and does not cite to any medical or scientific support for the allegation that Ganoderma Lucidum is a "natural blood thinner that prevents a person's blood from clotting properly and causes intestinal bleeding and platelet dysfunction." *Id.*

Plaintiff, a resident of Florida, alleges that in March 2013 he purchased "three boxes of Organo Gold coffee" from an unidentified Organo sales representative in Delaware. *Id.* ¶¶ 3, 8. Plaintiff alleges he thereafter consumed an unspecified amount of the coffee. *Id.* ¶ 8. Although Organo makes numerous beverages and supplements, *id.* ¶¶ 10, 14, the Complaint does not identify by name, include images of, or a receipt for, the particular Organo coffee products Plaintiff allegedly purchased.

On April 5, 2013, Plaintiff underwent gastric bypass surgery. *Id.* ¶ 9. Plaintiff does not allege when, in relation to his surgery, he drank the coffee, or the amount he drank. After the surgery, Plaintiff allegedly began to "vomit[] blood and suffer[] from blood clots." *Id.* As a result of these complications, "Plaintiff had to be resuscitated with multiple blood and platelet transfusions and undergo an emergency surgery." *Id.* Without identifying any specific facts, studies, or tests, Plaintiff asserts that his doctors allegedly "discovered" that his consumption of Organo coffee caused his postoperative complications. *Id.* On the basis of these allegations, Plaintiff asserts claims for (1) declaratory relief, (2) breach of express and implied warranties, (3) consumer fraud, (4) negligence, (5) negligent labeling/failure to warn, and (6) intentional misrepresentation. *Id.* ¶¶ 24-43.

Plaintiff also purports to seek certification of a class of "[a]ll persons and entities within the State of Delaware that purchased Organo Gold products contained [sic] Ganoderma Lucidum including but not limited to coffee, tea, cocoa, and/or supplements." *Id.* ¶ 14. Plaintiff asserts that the labels on all of Organo's products (not just the coffee Plaintiff purchased) are mislabeled because they fail to disclose the amount of Ganoderma Lucidum in each product and do not warn of the alleged blood-thinning properties of Ganoderma Lucidum. *See id.* ¶¶ 24-43. The Complaint, however, does not identify particular Organo products within the proposed class

3

definition, any labels that are supposedly mislabeled, or any scientific or medical literature to support the allegations that Ganoderma Lucidum has blood-thinning properties.

## IV.    ARGUMENT

### A.    Plaintiff's Claims Regarding the Content of Ganoderma Lucidum Are Preempted Under the Nutrition Labeling and Education Act

The express preemption provisions of the Nutrition Labeling and Education Act ("NLEA"), Pub. L. No. 101-535, 104 Stat. 2353 (1990), preempt all of Plaintiff's state-law claims that seek to require Organo to "provide ingredient content information" for Ganoderma Lucidum on its coffee products.[2]  Labeling regulations established by the Federal Food and Drug Administration ("FDA") do not require that Organo disclose content information for Ganoderma Lucidum on its coffee products, and any attempt to impose a state-law duty in addition to any duties required by federal law is expressly foreclosed by the NLEA.

Congress enacted the NLEA in 1990 to "clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods." *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 619 (4th Cir. 2015) (quoting H.R. Rep. No. 101-538, at 7 (1990)).  The NLEA was passed to develop a "nationwide system of uniform nutrition labeling" that allows manufacturers to label consistently and cost-effectively and provides consumers across the country with uniform information. *Id.*

Consistent with that objective, the NLEA contains express preemption provisions that prohibit states from imposing requirements for food labeling that are "not identical" to certain

---

[2]      The Complaint advances this theory specifically for the claims for declaratory judgment (Count I), negligence (Count IV), negligent labeling (Count V), and misrepresentation (Count VI).  Compl. ¶¶ 25, 36, 38-39, 41.  A fair reading of the Complaint is that Plaintiff attempts to advance this theory under his remaining claims for breach of warranties (Count II) and consumer fraud (Count III).  For the reasons stated herein, those claims are likewise preempted by the NLEA.

4

requirements imposed by the NLEA or already existing under the Food, Drug, and Cosmetic Act ("FDCA"). 21 U.S.C. § 343-1. The NLEA expressly preempts "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) . . . ." *Id.* § 343-1(a)(4). Section 343(q)(2) in turn governs the disclosure of nutrition information and authorizes the FDA to establish regulations for the disclosure of food ingredients. *Id.* § 343(q)(2)(A).

Pursuant to its authority under section 343(q), FDA strictly regulates how ingredients can be listed on a food product's label. For conventional foods such as coffee,[3] the Nutrition Facts Panel must list content information for certain dietary ingredients that have Reference Daily Intakes ("RDIs") or Daily Reference Values ("DRVs"). 21 C.F.R. § 101.9 (detailing disclosure requirements for the Nutrition Facts Panel). Examples of dietary ingredients that have RDIs or DRVs for which FDA requires disclosure of content information include sodium, sugar, and protein, among others. *Id.* §§ 101.9(c)(4) (sodium); 101.9(c)(6)(ii) (sugars); 101.9(c)(7) (protein); *see also id.* § 101.9(d)(7)(i) (requiring that content information be disclosed for these ingredients). The FDA prohibits the inclusion of dietary ingredients within the Nutrition Facts Panel that are not otherwise required. *Id.* § 101.9(c) ("No nutrients or food components other than those listed in this paragraph as either mandatory or voluntary may be included within the nutrition label."). Additional ingredients that cannot be included on the Nutrition Facts Panel are required to be listed in the Ingredients Statement in descending order of predominance by weight. *Id.* § 101.4(a). There is no federal requirement that ingredients listed in the Ingredient Statement include content information.

Because Ganoderma Lucidum does not have an RDI or DRV, there is no requirement that it be listed on the Nutrition Facts Panel. *Id.* § 101.9. Instead, Ganoderma Lucidum, when

---

[3]     Coffee qualifies as a "food" as that term is used in the FDCA. 21 U.S.C. § 321(f) (defining "food" as "articles used for food or drink for man or other animals").

present as an ingredient in coffee, must be listed on the Ingredient Statement with other ingredients in descending order by weight. *Id.* § 101.4(a). There is no federal requirement that the amount of Ganoderma Lucidum present be listed on Organo's coffee products.

Here, Plaintiff's state-law claims are expressly preempted by the NLEA because those claims "would impose a requirement that is not the same as the federal requirement."[4] *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 93 (D.N.J. 2011). Plaintiff alleges that the Organo coffee products he purchased were mislabeled under state law because they failed to disclose "content information" for Ganoderma Lucidum. Compl. ¶¶ 8, 25, 38-39. But Organo is not required to include the amount of Ganoderma Lucidum in its coffee labels; all that federal law requires is that Ganoderma Lucidum be disclosed as an ingredient on the Ingredient Statement and listed in descending order by weight with other ingredients. 21 C.F.R. §§ 101.4(a), 101.9. Thus, Plaintiff's state-law claims are preempted because they seek to impose a requirement that is not the same as the federal requirement.[5] *Young v. Johnson & Johnson*, 525 F. App'x 179, 182 (3d Cir. 2013) (affirming preemption of state-law claims that sought to prohibit manufacturer from making "No Trans Fat" and "Proven to Reduce Cholesterol" statements on its

---

[4] Where, as here, an express preemption clause broadly preempts all state law "requirements," the scope of preemption extends broadly to requirements imposed by both statutes and common law duties. *Riegel v. Medtronic, Inc.* 552 U.S. 312, 324 (2008); *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (interpreting the NLEA's express preemption provisions and explaining that "'the term 'requirements' . . . reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties.'" (citations omitted)).

[5] Plaintiff's claims also threaten a catch-22 by imposing a state-law duty that would render the labels for Organo's coffee products noncompliant with federal labeling requirements in Delaware and thus potentially misbranded under the FDCA. 21 U.S.C. § 343. Moreover, Plaintiff's claims would force Organo to modify its labeling for products sold only in Delaware. The NLEA expressly preempts such inconsistent state-law requirements. *Id.* § 343-1(a)(4) (preempting "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)," which in turn sets forth what ingredient information must be disclosed).

label when those claims were allowed under federal regulations); *Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006) (dismissing as preempted requirement for a warning about lactose intolerance on milk products because such a requirement exceeded the requirements of the NLEA); *In re PepsiCo, Inc., Bottled Water Mkt. & Sales Practices Litig.*, 588 F. Supp. 2d at 536 (holding requirement that purified water disclose it was from tap rather than other sources went beyond NLEA requirements and was thus expressly preempted).

Because the NLEA preempts Plaintiff's state-law claims that seek to hold Organo liable for failing to disclose the content of Ganoderma Lucidum on its coffee products, all of Plaintiff's state-law claims based on this theory must be dismissed with prejudice.[6]

### B. Plaintiff Fails to Plead Fraud and Intentional Misrepresentation with Particularity

Plaintiff's claims for fraud and intentional misrepresentation[7] (Counts III and VI) must be dismissed because the Complaint fails to allege those claims with the factual particularity required by Rule 9(b). Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s "stringent pleading restriction[]," a plaintiff must allege specific facts, including the "date, time and place of the alleged fraud" or must "otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (finding that "generic

---

[6]    For these same reasons, the safe harbor provision of the Delaware Consumer Fraud Act ("DCFA") bars Count III because Organo's coffee products comply with labeling regulations promulgated by the FDA. 6 Del. C. § 2513(b)(2); *see also Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, Case No. 05-cv-075, 2005 WL 2993937, at *2 (D. Del. Nov. 8, 2005) (explaining that safe harbor provision in the DCFA applies where FDA has primary jurisdiction as between FTC and FDA) (reversed on different grounds); Memo. of Understanding Between the Federal Trade Commission and FDA, MOU 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 (1971), *available at* http://www.fda.gov/AboutFDA/PartnershipsCollaborations/MemorandaofUnderstandingMOUs/ DomesticMOUs/ucm115791.htm (providing FDA with primary jurisdiction over "all matters regulating the labeling of food").

[7]    Although Count VI is labeled "misrepresentation," the Complaint refers to Organo's alleged "intentional[] misrepresent[ations]." Compl. ¶ 41. The claimed misrepresentation is the omission of some form of warning from Organo's coffee product. *E.g., id.*

references" to misrepresentations were insufficient to satisfy Rule 9(b)) (citations omitted). The use of "boiler plate and conclusory allegations will not suffice." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012) (citations omitted). Where allegations of fraud are brought against multiple defendants, as here, "the complaint must plead with particularity . . . the [specific] allegations of fraud" applicable to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).

Courts routinely apply Rule 9(b) to claims under the DCFA and for intentional misrepresentation. *E.g.*, *Indianapolis Life Ins. Co. v. Hentz*, Case No. 1:06-cv-2152, 2008 WL 4453223, at *10 (M.D. Pa. Sept. 30, 2008) (applying Rule 9(b) to claim under the DCFA); *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, Case No. 7092-VCP, 2012 WL 6632681, at *16 (Del. Ch. Ct. Dec. 20, 2012) (claim for intentional misrepresentation must be pleaded with particularity under Delaware's equivalent to Rule 9(b)).[8]

Here, Plaintiff's fraud allegations fall far short of the particularity required by Rule 9(b). Although Plaintiff alleges generally that Organo's products are mislabeled, the Complaint does not include an image of any offending labels or quote a portion of any label. Nor does the Complaint plead facts that would inject precision into Plaintiff's allegations, such as the identity of any speaker who made any alleged misrepresentations or omissions to Plaintiff, the context of any misstatements or omissions, or any other circumstances surrounding purported

---

[8] A claim under the DCFA requires "(1) that [the defendant's] advertisements contained a false representation and/or omitted a material fact; (2) that [the defendant] intended for plaintiffs to rely on the representation or omission; and (3) damages." *Yarger v. ING Bank*, 285 F.R.D. 308, 326 (D. Del. 2012) (citation omitted). A claim for intentional misrepresentation requires "(1) a false representation, or deliberate concealment, of a material fact, by the defendant; (2) the defendant acted with scienter; (3) an intent to induce plaintiff's reliance on the misrepresentation or concealment; (4) causation; and (5) damage resulting from the misrepresentation or concealment." *Smith v. Daimlerchrysler Corp.*, Case No. 94C-12-002JEB, 2002 WL 31814534, at *6 (Del. Super. Ct. Nov. 20, 2002).

misrepresentations or omissions by Organo that would place it "'on notice of the precise misconduct with which [it is] charged.'" *Kuhn Constr. Co.*, 844 F. Supp. 2d at 529-30 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). And, despite naming four Organo entities, Plaintiff does not attribute a single alleged misrepresentation or omission to any one defendant. Rule 9(b) is intended to "safeguard defendants against spurious charges of . . . fraudulent behavior." *Id.* The Rule cannot achieve its objective in the face of the generic and boilerplate allegations found in Plaintiff's Complaint. These deficiencies are only amplified for Plaintiff's sweeping class action, which covers a host of unspecified products regarding unidentified conduct over an undefined period of time.

Because Plaintiff has failed to satisfy the pleading requirements of Rule 9(b), his claims for consumer fraud (Count III) and intentional misrepresentation (Count VI) must be dismissed.

### C.     **Plaintiff Fails to Plead Essential Elements for His Remaining Claims**

Under Rule 12(b)(6), Plaintiff's Complaint must be dismissed if it fails to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted).

#### 1.     *Plaintiff Has Not Alleged Causation for His Failure-to-Warn Claims*

The Complaint does not plead facts to plausibly establish the essential element of causation for Plaintiff's breach of implied warranty of merchantability (Count II), negligence

(Count IV), and negligent labeling (Count V) claims.[9]  Specifically, there are no facts that connect the lack of a warning by Organo to Plaintiff's injuries allegedly resulting from the blood clots from his operation.

At most, Plaintiff asserts that his physical injuries were caused by the alleged blood-thinning properties of Ganoderma Lucidum (a conclusion for which Plaintiff cites no medical or scientific support).  Compl. ¶¶ 8-9.  These allegations fail, however, to establish a causal nexus between the purported defect (the lack of a warning) and Plaintiff's injuries.  There are no allegations for Counts II, IV, and V that the alleged failure to warn in any way factored into Plaintiff's injury such that, had Plaintiff been warned about the alleged blood-thinning properties of Ganoderma Lucidum, he would not have consumed or purchased the product, or proceeded with his surgery.[10]  *E.g.*, *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 753 (W.D. Pa. 2011) (dismissing negligent failure-to-warn claim where plaintiff failed to allege how a change in warning would have affected her choice to consume the product).  Furthermore, the Complaint does not contain any facts to support Plaintiff's claims of general or specific causation, such as the existence of scientific or medical literature documenting the blood-thinning properties of Ganoderma Lucidum or a description of how much Plaintiffs' blood thinned due to his

---

[9]      A claim for breach of the implied warranty of merchantability requires "(1) that a merchant sold the goods; (2) which were defective at the time of sale; (3) causing injury to the ultimate consumer; (4) the proximate cause of which was the defective nature of the goods; and (5) that the seller received notice of the injury."  *Reybold Grp., Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998); *see also* 6 Del. C. § 2-314.  To state a claim for negligence and negligent labeling, a plaintiff must establish "[1] defendant owed plaintiff a duty of care; [2] defendant breached that duty; and [3] defendant's breach was the proximate cause of plaintiff's injury."  *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001) (citation omitted).

[10]     Although Plaintiff alleges in Count VI that "[h]ad Defendants not withheld or omitted the important information about their products, Plaintiff and others similarly situated would not have purchased Organo Gold products, or would have paid less for them," Compl. ¶ 42, that allegation is not specific to the products Plaintiff purchased and is not made or incorporated into Counts II, IV, and V.

consumption of the coffee. Plaintiff's legal conclusions about causation, Compl. ¶¶ 31, 36, 39, cannot be credited. *Morse*, 132 F.3d at 906. In sum, there are insufficient facts to make it plausible that the label on Organo's coffee caused Plaintiff's injuries. *Ashcroft*, 556 U.S. at 678.

Because Plaintiff has not alleged facts to plausibly establish that the alleged defect, *i.e.*, the lack of a warning on the label, contributed to or caused his injuries, his claims in Counts II, IV, and V must be dismissed.

> 2. *No Facts Are Alleged to Establish the Existence of an Express Warranty*

Plaintiff has not identified any affirmation, fact, or other representation that he contends created an express warranty (Count II). Under Delaware's Uniform Commercial Code ("UCC"), an express warranty may be created by a seller through (1) any affirmation of fact or promise to the buyer relating to the goods which becomes the basis of the bargain so that the goods conform to the affirmation or promise, or (2) any description of the goods which is made part of the basis of the bargain so that the whole of the goods conform to the sample or model. 6 Del. C. § 2-313(1)(a)-(c). Absent allegations "that a promise or affirmative statement was made, how or by whom the promise was made, or what was in fact promised, a claim for breach of express warranty is not sufficiently plead[ed]." *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 501-02 (W.D. Pa. 2012) (interpreting Pennsylvania's UCC, which is similar to Delaware's UCC); *Baker v. APP Pharm., LLC*, Case No. 09-cv-05725 JAP, 2010 WL 4941454, at *4 (D.N.J. Nov. 30, 2010) (dismissing express warranty claim under New Jersey's UCC, which is similar to Delaware's UCC, because plaintiff "failed to identify any specific promise, affirmation, description or sample which might form the basis of the express warranty").[11]

---

[11] Courts frequently dismiss express warranty claims where a plaintiff fails to "plead any details regarding the content of any express warranty, how it was made, that it became the basis of the bargain, or that it was directed to" plaintiff. *Starks v. Coloplast Corp.*, Case No. 13-cv-3872, 2014 WL 617130, at *7 (E.D. Pa. Feb. 18, 2014); *see also Mladenov v. Wegmans Food*

Here, Plaintiff provides a conclusory, one-sentence allegation that "[Organo] breached an express warranty under 6 Del. C. § 2-313, created through advertising, promotion and product labeling, that [Organo] products containing Ganoderma Lucidum was [sic] safe for consumption and carried no unusual risk of injury." Compl. ¶ 29. Lacking are any facts about whether (1) Plaintiff saw and read any specific statements by Organo, (2) those statements were directed to Plaintiff, and (3) any particular statements formed the basis of bargain. In addition, Plaintiff does not allege whether he provided Organo with notice and an opportunity to cure the purported defect, as required by Delaware law. 6 Del. C. § 2-607(3). Because Plaintiff's one-sentence allegation fails to plausibly establish that an express warranty was created, let alone breached, Plaintiff's breach of express warranty claim in Count II must be dismissed.

### 3. No Facts Are Alleged to Establish the Existence of an Implied Warranty of Fitness for a Particular Purpose

Plaintiff's claim for breach of an implied warranty of fitness for a particular purpose (Count II) must be dismissed because Plaintiff has not alleged facts to establish that he had a purpose in purchasing Organo's coffee that was different from that product's ordinary purpose. There are four elements for this claim: "(1) a buyer has a special purpose for certain goods; (2) the seller knew or had reason to know of that purpose; (3) the seller knew or had reason to know that the buyer was relying on the seller's superior skill to select goods that fulfilled that purpose; and (4) the buyer in fact relied on the seller's superior skill." *DiIenno v. Libbey Glass Div., Owens-Illinois, Inc.*, 668 F. Supp. 373, 376 (D. Del. 1987); *see also* 6 Del. C. § 2-315.

The Complaint does not set forth the basic elements of this claim. One lone sentence sets forth the legal conclusion that Organo allegedly breached the "implied warrant[y] of [6 Del. C. §

---

*Mkts., Inc.*, --- F. Supp. 3d ---, Case Nos. 15-00373, 15-00382, 15-00618-JEI-AMD, 2015 WL 5023484, at *14 (D.N.J. Aug. 26, 2015) ("Without an allegation that Plaintiffs actually saw and read particular signs, the Amended Complaints do not state facts showing that any particular product description became the basis for some specific bargain.").

2-315] that Organo Gold products containing Ganoderma Lucidum . . . was fit for a particular

purpose . . . ." Compl. ¶ 30. Absent are any facts to establish Plaintiff's "particular purpose" in

purchasing Organo's coffee that was different from its ordinary purpose, or that Organo had any

reason to know of Plaintiff's "particular purpose." Thus, Plaintiff's implied warranty of fitness

claim in Count II must be dismissed.

### D.    The Court Should Dismiss Plaintiff's Declaratory Judgment Claim

The Court should dismiss Plaintiff's request for declaratory relief because Plaintiff seeks

primarily monetary damages that are better suited to redress his alleged personal injuries. Courts

have discretion under the Delaware Declaratory Act and the Federal Declaratory Judgment Act

to dismiss a request for declaratory relief if an alternative remedy is better or more effective.

*Burris v. Cross*, 583 A.2d 1364, 1376 (Del. Super. Ct. 1990) (dismissing request for declaratory

relief and stating that "[a]lthough the mere existence of another adequate remedy does not

require dismissal, it can constitute sufficient grounds for dismissal in the Court's discretion");

*see also Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1015 (D. Minn. 2012) (dismissing

claim for declaratory relief "because it is unnecessary; Plaintiffs have already asserted a claim

for damages based on the same underlying dispute").

Here, Plaintiff requests a declaration that Organo's coffee products are mislabeled.[12]

Compl. ¶¶ 25-27. For Mr. Johnson, an alternative remedy in the form of monetary relief is

pleaded and would be a more effective remedy in these circumstances. *E.g., Florists'*

*Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 847 (E.D. Mich. 2003)

(dismissing claim for declaratory relief as plaintiffs' contract and trademark claims seeking

monetary relief provided an "alternative remedy that is better or more effective"). Unlike

---

[12]    Plaintiff only has standing with respect to the coffee products he purchased. Compl. ¶ 8
(alleging that Plaintiff purchased "three boxes of Organo Gold coffee").

monetary relief, a declaration of legal rights would not redress Mr. Johnson's physical injuries and associated medical expenses.[13] Thus, Plaintiff's declaratory judgment claim should be dismissed.

### E. Plaintiff's Class Allegations Should Be Stricken

The Court may strike class allegations prior to discovery pursuant to Rule 12(f) "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*, Case No. 07-cv-4925 (JAP), 2008 WL 4056244, at *7 (D.N.J. Aug. 26, 2008); *see also Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, Case No. 12-cv-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015). At the pleading stage, Plaintiff bears the "burden of advancing a prima facie showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Semenko v. Wendy's Int'l, Inc.*, Case No. 2:12-cv-0836, 2013 WL 1568407, at *2 (W.D. Pa. Apr. 12, 2013); *see also* Fed. R. Civ. P. 23(d)(1)(D); Fed. R. Civ. P. 23(c)(1)(A) (providing that the court is to determine whether a class action is maintainable "[a]t an early practicable time").

In this case, the putative class is defined as: "All persons and entities within the State of Delaware that purchased Organo Gold products contained [sic] Ganoderma Lucidum including but not limited to coffee, tea, cocoa, and/or supplements." Compl. ¶ 14. This proposed class

---

[13]     Under Delaware's Declaratory Act, courts have discretion to "refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, will not terminate the uncertainty or controversy giving rise to the proceeding." 10 Del. C. § 6506; *see also Falcon Steel Co., Inc. v. HCB Contractors*, Case No. 89C-JL-214, 1991 WL 166120, at *2 (Del. Super. Ct. July 31, 1991) (noting that declaratory relief is not a separate cause of action but instead "an additional or alternative" remedy). Even if such a declaration were warranted (which it is not), it would not terminate these proceedings, as Mr. Johnson's personal injury claims will require additional findings. 10 Del. C. § 6506.

does not meet the essential requirements of Rule 23 and discovery will not cure the deficiencies with this proposed class action. The Court should therefore strike the class allegations for at least four independent reasons.[14]

### 1. Plaintiff's Claims Are Not Typical of the Class

The claims of the named Plaintiff, Mr. Johnson, are not typical of those of the putative class. Rule 23(a)(3)'s requirement that a plaintiff's claims be "typical" of the claims asserted by potential class members asks whether the named plaintiff is "markedly different from the class as a whole." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012). This prerequisite is not satisfied unless the class representative's claims are "'generally the same' as those of the other class members in terms of both 'the legal theory advanced' and 'the factual circumstances underlying that theory.'" *Semenko*, 2013 WL 1568407, at *9 (citations omitted).

Plaintiff's claims are not typical of the class. Mr. Johnson alleges that he suffered serious medical injuries that required him to be "resuscitated with multiple blood and platelet transfusions and [to] undergo an emergency surgery." Compl. ¶ 9. Nowhere is it alleged that any member of the class suffered such serious medical injuries, or that any potential class member sustained anything other than economic injuries. Plaintiff's counsel acknowledged at the hearing on Plaintiff's Motion to Remand that "[n]owhere does [the Complaint] allege a personal injury claim on behalf of any absent class member." Oct. 9, 2015 Hr'g Tr. at 12:9-11 (cited excerpts attached hereto as Exhibit A); *see also id.* at 5:17-6:21. Moreover, the types of proof required for, defenses to, and damages associated with, Mr. Johnson's claims will be

---

[14]   It is unclear from the Complaint whether Plaintiff seeks to certify one class of individuals who have suffered economic injuries and another class of individuals with physical injuries. To the extent Plaintiff attempts to certify a personal injury class, such actions are typically not appropriate for class treatment under Rule 23. *See* Fed. R. Civ. P. 23(b)(3) Advisory Committee's note to 1966 amendment; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-25 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 864 (1991).

different than those relating to the claims of the class.[15] In addition, typicality is not satisfied here because Plaintiff purchased only a coffee product and has not purchased all varieties of Organo's many teas, supplements, and other products swept into the proposed class definition. *E.g.*, *Major v. Ocean Spray Cranberries, Inc.*, Case No. 5:12-cv-03067 EJD, 2013 WL 2558125, at *4 (N.D. Cal. June 10, 2013) (holding typicality requirement not met where "Plaintiff's proposed classes are so broad and indefinite that they encompass products that she herself did not purchase.")

Although Plaintiff alleges that his claims are "typical of the claims of the members of the purported class," Compl. ¶ 19, this boilerplate allegation cannot smooth over the many differences between Mr. Johnson's personal injuries and the economic injuries of the class. Thus, Plaintiff's class allegations should be stricken. *Semenko*, 2013 WL 1568407, at *9.

## 2. Plaintiff Is Not an Adequate Class Representative

A named plaintiff must be an adequate representative, meaning that he or she must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Prods., Inc.*, 521 U.S. at 625-26. Adequacy has two components; first it tests the qualifications of counsel and second it seeks to "uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 521 (3d Cir. 2004); *see also Semenko*, 2013 WL 1568407, at *10 (noting that the "'intraclass conflict' aspect of the adequacy analysis dovetails with the typicality inquiry").

---

[15] Proving the claims of the class will require different evidence than Mr. Johnson needs to present – that is a problem for the typicality analysis. *E.g.*, *Semenko*, 2013 WL 1568407, at *9 (finding typicality lacking where proof for named plaintiff would not automatically establish claims of class members). Furthermore, there are many differences between the claims of Mr. Johnson and the purported class. For example, unlike Mr. Johnson's claims, the tort claims of absent class members seeking economic damages are barred by Delaware's economic loss doctrine. *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1994).

Plaintiff is not an adequate class representative because his interests are divergent from those of absent class members by virtue of his physical injuries. Mr. Johnson has no personal incentive to establish the economic injuries (if any) allegedly suffered by class members. Moreover, his claims largely do not depend on proof of economic harm from the purchase of Organo coffee and are subject to factual defenses that are unique to Mr. Johnson, *e.g.*, lack of specific causation. As other courts have recognized, a court "must deny class certification if [a plaintiff] cannot demonstrate that his interests are sufficiently congruent with those of the class he purports to represent in that he is not subject to unique defenses that threaten to become the focus of the litigation." *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 63 (S.D.N.Y. 2006); *see also Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990). No amount of discovery will cure this conflict. *Semenko*, 2013 WL 1568407, at *3 (stating that a court may strike class allegations where the rules are clear and discovery on class certification is unnecessary). Thus, Plaintiff's class allegations should be stricken because he is not an adequate class representative.

### 3. *The Purported Class Is Not Ascertainable*

Plaintiff's class definition fails to identify a clearly ascertainable set of class members. "Class ascertainability is an essential prerequisite of a class action" with respect to actions under Rule 23(b)(3).[16] *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (citations omitted). There are two requirements for ascertainability. First, "a plaintiff must show, by a preponderance of the evidence, that the class is currently and readily ascertainable based on objective criteria." *Id.* (citations omitted). Second, the method of determining whether someone is in the class must be "administratively feasible." *Id.* at 307. "A plaintiff does not satisfy the

---

[16]     The Complaint invokes Delaware Superior Court Civil Rule 23(b)(3), which is similar to Federal Rule of Civil Procedure 23(b)(3). *See* Compl. ¶¶ 14, 18, 21.

ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership." *Id.* Ascertainability eliminates "serious administrative burdens," protects class members by facilitating the best notice practicable, and protects defendants' due process rights. *Marcus*, 687 F.3d at 593-94.

The ascertainability inquiry here is whether there is a mechanism to identify each potential class member who purchased Organo products in Delaware during some time period. *See* Compl. ¶ 14. The class definition, however, presents an unwieldy class that encompasses "[a]ll Persons and entities within the State of Delaware that purchased *any* of Organo's many different products that are sold through, among other distribution channels, independent sales representatives. *Id.* ¶¶ 10, 14. The Complaint contains no allegation or indication that class membership is capable of determination by objective criteria or that there is an administratively feasible means of determining class membership.[17]

Plaintiff's circumstances are illustrative of the ascertainability problem. Plaintiff alleges that he purchased an unidentified version of Organo's coffee for an undisclosed amount from an unidentified "Organo Gold representative in Delaware." *Id.* ¶ 8. Plaintiff does not allege that he (or any member of the purported class) purchased directly from Organo or through another distribution channel; he does not even explain where his purchase was "in Delaware" or the referenced Organo representative was "in Delaware."[18] *Id.* Nor is there any allegation as to how much Plaintiff paid or whether Plaintiff (or any member of the purported class) retained receipts. If the proposed class were certified, class members would be required to self-identify by

---

[17] Notably, Plaintiff, a resident of Florida, would not be a member of the purported class because he is not "within the State of Delaware." Compl. ¶¶ 3, 14.

[18] The Court may take judicial notice of the Declaration of Norm Perrett, Organo's Senior Vice President of International Operations, in which he notes that end customers may purchase through various third-party distribution channels. Perrett Decl. ¶ 8 (D.I. 12-1); *see also Starks*, 2014 WL 617130, at *1 n.3 (taking judicial of court-filed documents).

18

providing basic information about their purchases, including, *inter alia*, whether they purchased

any one of Organo's many products; which ones; from Organo, an independent sales

representative, or another distribution channel; how many Organo products were purchased;

sizes; and at what prices.

Courts have stricken similar class allegations where it is plain from the face of the

complaint that no discovery would surmount obvious ascertainability challenges. For example,

in *Mladenov v. Wegmans Food Markets, Inc.*, plaintiffs alleged that the defendant grocery stores

falsely advertised bread products as made from scratch and/or made in their grocery stores. 308

F.R.D. 127, 129 (D.N.J. 2015). After the court *sua sponte* ordered plaintiffs to show cause why

their class allegations should not be stricken, *id.* at 131-32, the *Mladenov* court struck plaintiff's

class allegations on ascertainability grounds. *Mladenov*, 2015 WL 5023484, at *4. The court

rejected arguments that defendants' sales records could identify class members because those

records would not identify customers who bought bread based on defendants' advertisement, and

sales records of credit and debit purchases would not identify cash purchasers. *Id.* Other courts

have likewise held that class membership based on potential class members' "say so" – as would

be the case here – fails to satisfy the requirement of ascertainability.[19]

At bottom, Plaintiff's class allegations should be stricken because the purported class is

incapable of identification by objective criteria in an administratively feasible manner.

---

[19]    *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355-56 (3d Cir. 2013); *Stewart v. Beam Glob. Spirits & Wine, Inc.*, Case No. 11-cv-5149, 2014 WL 2920806, at *7, *12-13 (D.N.J. June 27, 2014) (rejecting use of affidavits and social media postings to ascertain class membership of Skinnygirl Margarita purchasers); *In re POM Wonderful LLC*, Case No. 10-cv-02199, 2014 WL 1225184, at *6 (C.D. Cal. Mar. 25, 2014) (decertifying a class of juice purchasers because "there is no way to reliably determine who purchased Defendant's products or when they did so"); *Weiner v. Snapple Beverage Corp.*, Case No. 07-cv-8742 DLC, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (rejecting as "unrealistic" method for identification of class members that included producing "a receipt, offer a product label, or even sign a declaration to confirm that the individual had purchased" a Snapple beverage within the class period).

### 4. *Plaintiff Cannot Justify Certification of a Class Under Rule 23(b)(2)*

The Complaint's class for declaratory relief under Rule 23(b)(2) cannot be sustained.[20] Rule 23(b)(2) classes (which do not have a right to opt out) are "limited to those actions seeking primarily injunctive or corresponding declaratory relief." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998); *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1008 (3d Cir. 1986) (affirming denial of Rule 23(b)(2) class certification that sought predominantly money damages); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557-59 (2011) (holding that claims for monetary relief cannot be certified under Rule 23(b)(2)). When "'the realities of the litigation' demonstrate that the suit has been brought primarily for money damages, it may not be maintained as a (b)(2) class action.'" *Christiana Mortg. Corp. v. Del. Mortg. Bankers Ass'n*, 136 F.R.D. 372, 381 (D. Del. 1991) (quoting *In re Sch. Asbestos Litig.*, 789 F.2d at 1008).

Plaintiff's Complaint seeks to recover primarily money damages. Compl. ¶¶ 2(d), 21, 31, 34, 36, 39, 43. The Complaint's lone request for declaratory relief is dwarfed by the request for economic, compensatory, and punitive damages. *Id.* at 15-16 (Prayer for Relief); *see also Christiana Mortg. Corp.*, 135 F.R.D. at 381; *Mladenov*, 2015 WL 5023484, at *4 (striking Rule 23(b)(2) class allegations, "the mere existence of a claim seeking injunctive and declaratory relief does not automatically trigger 23(b)(2)"). Because Plaintiff cannot maintain a class under Rule 23(b)(2), his allegations seeking to certify such a class should be stricken.

## V. CONCLUSION

For the foregoing reasons, all of Plaintiff's individual claims must be dismissed and the class allegations in the Complaint should be stricken.

---

[20] The Complaint invokes Delaware Superior Court Civil Rule 23(b)(2), which is similar to Federal Rule of Civil Procedure 23(b)(2). Compl. ¶¶ 14, 22.

Dated: January 11, 2016                          Respectfully submitted,


/s/ Colm F. Connolly
Colm F. Connolly (Del. Bar No. 3151)
Jody C. Barillare (Del. Bar No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
1007 N. Orange St., Ste. 501
Wilmington, DE 19801
Telephone:     302.574.3000
Facsimile:     302.574.3001
cconnolly@morganlewis.com
jbarillare@morganlewis.com

--*and*--

Thomas J. Sullivan (*pro hac vice*)
Zachary M. Johns (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:     215.963.5000
Facsimile:     215.963.5001
tsullivan@morganlewis.com
zjohns@morganlewis.com

*Attorneys for Defendant
Organo Gold Int'l, Inc.*